IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **WILLIAM LYLES, #R-29099,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-00838-NJR |
| | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **DR. TROST, ARTHUR FUNK,** | ) | |
| **GAIL WALLS, NURSE STEPHANIE,** | ) | |
| **DR. LOUIS SCHICKER,** | ) | |
| **KIMBERLY BUTLER,** | ) | |
| **IDOC, BRUCE RAUNER,** | ) | |
| **and UNKNOWN PARTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff William Lyles, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action pursuant to 42 U.S.C. § 1983 for the alleged violations of his Eighth Amendment rights at Menard (Doc. 1). Plaintiff claims that he was denied adequate medical care for a shoulder injury in 2015 (Doc. 1, pp. 1-12; Doc. 1-1, pp. 1-12). According to the complaint, he was repeatedly charged co-pays for appointments with unqualified medical providers, who failed to perform basic diagnostic testing or provide adequate treatment for his injury. Plaintiff maintains that he was denied appropriate care because of several cost-saving policies, customs, or practices at the prison. According to Plaintiff, the prison's healthcare unit is intentionally understaffed, inmates are routinely overcharged co-pays, and necessary diagnostic tests and treatments are avoided because of cost concerns (*id.*).

In connection with this claim, Plaintiff now sues the following defendants: Wexford Health Sources, Inc. ("Wexford"), Governor Bruce Rauner, Illinois Department of Corrections ("IDOC"), John Doe (unknown IDOC director), Louis Schicker (IDOC medical director), Arthur Funk (IDOC regional medical director), Kimberly Butler (prison warden), Doctor Trost (prison medical director), Gail Walls (health care unit administrator), and Nurse Stephanie (prison medical technician). Plaintiff seeks monetary damages and proper medical treatment for his injuries (Doc. 1-1, p. 11).

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

## The Complaint

According to the complaint,[1] Plaintiff injured his shoulder while playing basketball at Menard in June 2015 (Doc. 1, pp. 9-12; Doc. 1-1, pp. 1-12). He submitted a sick call slip and, before meeting with a medical professional, paid a $5.00 co-pay. A medical technician, named Nurse Stephanie, examined him on June 25, 2015. Plaintiff told Nurse Stephanie that he was suffering from "excruciating pain"[2] (Doc. 1, p. 12). He rated the pain a "9" out of "10," with "10" being the most intense (*id.*). Despite his complaints, Nurse Stephanie would not refer

---

[1] The complaint frequently refers to exhibits. However, no exhibits were filed with the complaint, and they are not necessary to support a claim at this early stage in litigation.

[2] Plaintiff is no stranger to shoulder pain. According to the allegations, he suffered from a dislocated shoulder in 1995 and is familiar with the pain associated with such injuries.

Plaintiff to a doctor for further treatment (*id*.; Doc. 1-1, p. 4). Unqualified to diagnose or treat Plaintiff's shoulder injury, Nurse Stephanie offered him little more than nonprescription pain medication.

Plaintiff endured several more rounds of sick call slips, co-pays, and appointments in the month that followed (Doc. 1, p. 12). During this time, he suffered from "constant pain" (*id*.). He was unable to perform basic tasks, such as brushing his teeth, washing his body, and dressing himself. He reported this to Nurse Stephanie. Plaintiff also told her that his shoulder was getting worse. After four or five rounds of appointments, Plaintiff was finally referred to a prison doctor on July 7, 2015 (*id*.; Doc. 1-1, p. 4).

Plaintiff's call passes were repeatedly cancelled because the prison doctor could not accommodate an appointment with him (Doc. 1-1, p. 2). When Plaintiff finally met with the doctor, he received a recommendation for an MRI to properly diagnose his injury. By all indications, the test was never scheduled. When Plaintiff eventually requested an update regarding the status of this test, Nurse Walls told him that "he wasn't put in for a[n] MRI" (*id*.).

In the meantime, Plaintiff complained of unremitting pain to the prison's medical technicians, nurses, and doctor (Doc. 1-1, p. 1). The Tylenol, ibuprofen, and naproxen he was given for pain proved to be ineffective. Plaintiff wrote letters to Doctor Trost, Director Schicker, Director Funk, and Nurse Walls to request proper medical care (*id*. at 1, 5, 7). These defendants took no steps to modify Plaintiff's diagnostic, treatment, or pain management plans (*id*. at 7). Plaintiff was instead told that he "would have to suck it up [and] deal with the pain because Wexford has a policy" of prohibiting all forms of nonprescription pain medication (*id*. at 1).

In December 2015, Plaintiff wrote an emergency grievance to Warden Butler (*id*.). After reviewing the grievance, Warden Butler agreed that it presented an emergency (*id*. at 7-8).

But, for reasons that are not set forth in the complaint, the warden took no action to ensure that Plaintiff received medical care (*id*. at 8-9).

Plaintiff blames his inadequate medical care on several cost-saving policies, customs, and/or practices at the prison. First, he alleges that Wexford has not hired a sufficient number of qualified medical professionals to meet the needs of Menard's increasing prison population; Governor Rauner, Director Doe, Director Schicker, and Warden Butler have allegedly ignored the staffing shortage (Doc. 1, pp. 6-10). Second, Plaintiff alleges that the prison's policy of charging inmates co-pays for repeated visits or for chronic medical conditions frustrates inmates' efforts to obtain necessary medical care, and Doctor Trost, Director Funk, and Director Doe condone this policy (Doc. 1-1, pp. 1, 11). Third, Wexford's policy of delaying or denying more costly forms of medical care, such as MRIs and prescription pain medication, has resulted in a denial of Plaintiff's access to adequate medical care (Doc. 1, p. 10).

Plaintiff now sues the defendants for violating his right to be free from cruel and unusual punishment under the Eighth Amendment (Doc. 1-1, p. 11). He seeks monetary damages and injunctive relief[3] (*id*.).

## Merits Review Under 28 U.S.C. § 1915A

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claim in Plaintiff's *pro se* complaint into the following enumerated counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court:

---

[3] Plaintiff's request for "emergency" relief was denied without prejudice on July 26, 2016 (Doc. 5). He has not renewed his request for any form of immediate relief, such as a temporary restraining order or preliminary injunction, but he is free to do so during the pending action by filing the appropriate motion pursuant to Rule 65 of the Federal Rules of Civil Procedure.

>    Count 1: Eighth Amendment deliberate indifference to medical needs claim against Defendants for denying Plaintiff adequate medical care for his shoulder injury and related pain at Menard.[4]
>
>    Count 2: Eighth Amendment deliberate indifference to medical needs claim against Defendants for conditioning the provision of medical care on the receipt of medical co-pays.

As discussed in more detail below, **Count 1** shall receive further review against Nurse Stephanie, Nurse Walls, Doctor Trost, Warden Butler, Director Funk, Director Schicker, and Wexford; this claim shall be dismissed without prejudice against the IDOC, IDOC director, and Governor Rauner. In addition, **Count 2** shall be dismissed without prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

## Count 1

The Eighth Amendment "imposes a duty on government officials to provide medical care to prisoners." *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle*, 429 U.S. at 104). To state a claim, a prisoner must demonstrate that his medical condition is sufficiently serious (*i.e.*, the objective standard). *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)). He also must demonstrate that each defendant responded to his serious medical need with deliberate indifference (*i.e.*, the subjective standard). *Id*.

---

[4] In the complaint, Plaintiff characterizes this claim as a deliberate indifference to medical needs claim or, in the alternative, a claim for unconstitutional conditions of confinement. Both claims arise under the Eighth Amendment and, as pleaded, are duplicative. Plaintiff may have but one recovery for his injuries, and the Eighth Amendment claim for deliberate indifference to his medical needs more aptly describes his claim. *Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015). Plaintiff's alternative claim for unconstitutional conditions of confinement is considered dismissed without prejudice.

The objective component of this claim is satisfied by the allegations in the complaint. A medical condition is considered objectively serious if it has been diagnosed by a physician as requiring treatment or would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). Plaintiff was repeatedly seen by medical professionals for a shoulder injury and associated pain. A prison doctor told him that an MRI would be necessary to properly diagnose and treat his injury. For screening purposes, Plaintiff's shoulder injury and associated pain satisfy the objective component of this claim.

But more is required to support an Eighth Amendment claim. The allegations must also suggest that each defendant responded to Plaintiff's serious medical needs with deliberate indifference. A prison official acts with deliberate indifference when he "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 411 F.3d at 653. Neither "medical malpractice nor mere disagreement with a doctor's medical judgment" is sufficient to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) (citing *Estelle*, 429 U.S. at 106; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). At the same time, a prisoner is also "not required to show that he was literally ignored." *Berry*, 604 F.3d at 441 (citing *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). The choice of "easier and less efficacious treatment" for a serious medical need may amount to deliberate indifference. *Id.* (citations omitted). *See also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective"); *Greeno*, 414 F.3d at 655 (noting that persistence in a course of treatment "known to be ineffective" violates the Eighth Amendment)). Against this backdrop, the Court

will consider whether the allegations suggest that each defendant exhibited deliberate indifference toward Plaintiff.

### Nurse Stephanie

The allegations do suggest that Nurse Stephanie may have responded to Plaintiff's serious medical needs with deliberate indifference. Plaintiff repeatedly met with Nurse Stephanie to discuss his shoulder injury and pain. She refused to refer him to a doctor for further evaluation, and she responded to his complaints of persistent and intense pain by giving him nonprescription pain medication, even after learning that it was ineffective. Given these allegations, the Court cannot dismiss Count 1 against Nurse Stephanie.

### Nurse Walls

Likewise, Nurse Walls allegedly knew about Plaintiff's untreated shoulder injury and pain. She received written requests for treatment from Plaintiff. When he asked for information regarding the status of his MRI, Nurse Walls informed him that he had not been scheduled for the test. She then took no steps to ensure that his MRI was scheduled. Under the circumstances, the Court cannot dismiss Count 1 against Nurse Walls either.

### Doctor Trost

Doctor Trost allegedly referred Plaintiff for an MRI to properly diagnose his shoulder injury, but took no steps to ensure that the test was completed or that appropriate follow-up care was provided. The doctor also made no changes to Plaintiff's diagnosis and treatment plan, after Plaintiff complained in writing directly to the doctor. Count 1 shall receive further review against this defendant.

### Warden Butler

Count 1 shall also receive further review against Warden Butler. In December 2015, Plaintiff sent an emergency grievance directly to the warden to complain about the lack of adequate medical care he had received for his injury. The warden agreed that the grievance described an emergency situation. Even so, the warden took no steps to ensure that Plaintiff received medical care thereafter. Count 1 shall also proceed against Warden Butler.

### Grievance Officials

The Court will also allow Count 1 to proceed against those officials who allegedly "turned a blind eye" to Plaintiff's written complaints about his untreated shoulder injury and ongoing pain, including Director Funk and Director Schicker. It is well settled that a government official is only liable for his or her own misconduct under § 1983. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citation omitted). To recover damages against a supervisory official, a § 1983 plaintiff cannot rely on a theory of *respondeat superior*; instead, he must allege that the defendant, through his or her own conduct, has violated the Constitution. *Id.* at 777-78 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). In the context of a medical needs claim, a prison official who is made aware of a prisoner's lack of medical care for a serious medical need, through a coherent and detailed grievance or some other correspondence, may be deliberately indifferent where he or she fails to intervene on an inmate's behalf and rectify the situation. *Id.* An inmate's "correspondence to a prison administrator may thus establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Id.* (citing *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996)). According to the allegations in the complaint, Plaintiff notified Director Funk and Director Schicker about his untreated shoulder injury and his persistent, untreated pain, yet they

failed to intervene and ensure that he received adequate medical care. Although Plaintiff does not include a copy of these grievances, the complaint offers sufficient details to suggest that these defendants were aware of the untreated medical need and may have responded to it with deliberate indifference. At this early stage, Count 1 shall proceed against Director Funk and Director Schicker as well.

### Wexford

Finally, the Court will allow Count 1 to proceed against Wexford. Plaintiff's claims against this defendant arise from several policies, customs, or widespread practices that are attributable to Wexford, *i.e.*, namely that Wexford intentionally understaffed Menard's HCU and refused to pay for costly, but necessary, diagnostic procedures and treatments. Generally, a private corporation cannot be held liable under § 1983 "unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself [because] [r]*espondeat superior* liability does not apply to private corporations under § 1983." *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). In this case, Plaintiff alleges that the policies, customs, or widespread practice of understaffing the prison's HCU and denying costly care may have caused the constitutional violation at issue. Plaintiff attributes these policies, customs, or practices to Wexford and alleges that each of the other remaining defendants simply carried out the policies. Under the circumstances, Count 1 warrants further review against Wexford.

### IDOC, IDOC Director, and Governor Rauner

This claim shall be dismissed against the IDOC, the IDOC director, and Governor Rauner. Plaintiff cannot maintain his suit for money damages against the IDOC because it is a

state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits against states in federal court for money damages. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same); *Santiago v. Lane*, 894 F.2d 219, 220 n. 3 (7th Cir. 1990) (same). And, to the extent that he seeks injunctive relief, Warden Butler is the appropriate official to carry out that relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (it is generally appropriate to name the government official who is responsible for carrying out the requested relief, in his or her official capacity). Count 1 shall be dismissed against the IDOC without prejudice.

Likewise, Count 1 shall be dismissed against the unknown IDOC director and Governor Rauner. As previously stated, there is no supervisory liability in a § 1983 action. To be held liable, a defendant must be "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). No allegations suggest that the IDOC director or Governor Rauner personally participated in any decision to deny Plaintiff medical care or, for that matter, implemented any policy, custom, or practice that resulted in a constitutional deprivation.

Plaintiff offers nothing more than conclusory allegations in support of his claims against these individuals. The complaint alleges that the IDOC director and Governor Rauner "condoned" the policies and practices that were in place at the prison. Such allegations do not satisfy the *Twombly* standard. *Ashcroft v. Iqbal*, 556 U.S. at 680 (citing *Twombly v. Bell Atlantic*

*Corp.*, 550 U.S. 544 (2007) (courts are not required to assume that conclusory allegations are true, even early in litigation)). Plaintiff offers no other allegations suggesting that these defendants were on notice that a particular policy, custom, or widespread practice resulted in Plaintiff's denial of care or that either defendant exhibited deliberate indifference toward him. Put simply, Plaintiff has not "nudged [his] claims . . . across the line from conceivable to plausible." *Id*. at 680. Without more, Count 1 must be dismissed against both of these defendants without prejudice as well.

### Count 2

In the complaint, Plaintiff suggests that he should have been exempt from the requirement that he make a co-payment before receiving medical care for his allegedly untreated and/or chronic medical condition (Docs. 1 and 1-1). An inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. "The Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs,* 703 F.3d 1024, 1026 (7th Cir. 2012). And an inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making." *Id.* at 1027. This claim is not cognizable in a § 1983 action. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law. *Id*. ("[T]he imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Therefore, should Plaintiff wish to pursue this matter further, he must do so in state court. Count 2 is dismissed without prejudice.

**Pending Motions**

Plaintiff filed a motion for leave to proceed *in forma pauperis* (Doc. 2), which will be addressed in a separate court order.

Plaintiff filed a motion to appoint counsel (Doc. 3), which shall be referred to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

Plaintiff also filed a motion to amend complaint (Doc. 6), which is **DENIED** because he failed to submit a proposed "First Amended Complaint" along with his motion.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** without prejudice against Defendants **IDOC**, **BRUCE RAUNER**, and **UNKNOWN PARTY (IDOC DIRECTOR)** for failure to state a claim upon which relief may be granted, and **COUNT 2** is **DISMISSED** without prejudice against all of the defendants for the same reason.

**IT IS FURTHER ORDERED** that Defendants **IDOC**, **BRUCE RAUNER**, and **UNKNOWN PARTY (IDOC DIRECTOR)** are **DISMISSED** without prejudice from this action because the complaint fails to state a claim for relief against them.

**IT IS ORDERED** that **COUNT 1** is subject to further review against Defendants **WEXFORD HEALTH SOURCES, INC., DR. TROST, ARTHUR FUNK, GAIL WALLS, DR. LOUIS SCHICKER, KIMBERLY BUTLER,** and **NURSE STEPHANIE.** With regard to **COUNT 1**, the Clerk shall prepare for Defendants **WEXFORD HEALTH SOURCES, INC., DR. TROST, ARTHUR FUNK, GAIL WALLS, DR. LOUIS SCHICKER, KIMBERLY BUTLER,** and **NURSE STEPHANIE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint (Doc. 1), and

this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on the motion to appoint counsel (Doc. 3), pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United

States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, whether or not his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 25, 2016**

                                                          **NANCY J. ROSENSTENGEL**
                                                          **United States District Judge**