IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM LYLES, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. 3:16-cv-838-NJR-DGW |
| WEXFORD HEALTH SOURCES, INC., DR. TROST, ARTHUR FUNK, GAIL WALLS, DR. LOUIS SCHICKER, KIMBERLY BUTLER, and TANYA SMITH, | ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Wexford Health Sources, Inc. (Doc. 46) be **DENIED** and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff, William Lyles, is proceeding on one count against a number of Defendants related to the treatment of a shoulder injury that occurred in 2015 while he was incarcerated at the Menard Correctional Center. As to the moving Defendant, Wexford Health Sources, Inc., Plaintiff claims that various policies and practices resulted in understaffing and the failure to pay

for costly treatment that in turn caused a violation of his Eighth Amendment rights. In particular, Plaintiff claims that medical staff lacked necessary education and experience to evaluate and treat his shoulder injury and that, in an attempt to save money, necessary medical care was not furnished.

In an emergency grievance dated December 3, 2015, Plaintiff stated that after paying over $20.00 in co-payments, he still had not received adequate medical treatment for his shoulder injury (Doc 47-1, pp. 1-4). He claimed that he only had been given ineffective pain medication and that a promised MRI was never administered (*Id*.). The grievance was deemed an emergency by the Warden (*Id*.). The grievance officer recommended that the grievance be deemed moot, because Plaintiff was receiving medical care (*Id*.). In making his recommendation, the grievance officer noted that the HealthCare Unit told him that Plaintiff refused medical care at one point because he was told that he needed to make a co-pay. The Warden agreed on December 18, 2015 and Plaintiff appealed to the Administrative Review Board (ARB) (*Id*.). The ARB affirmed the decision on March 24, 2016 (*Id*.).

Plaintiff also submitted other grievances to which he did not receive responses. In a grievance dated December 21, 2015, Plaintiff complained about having to make another co-pay in order to see the doctor about his shoulder pain (Doc. 64-3, p. 1). When he complained about it to the nurse, she said that it was beyond her control and that she was doing as instructed by her "bosses" (*Id*. 2). In a grievance dated January 17, 2016, Plaintiff stated that he was informed by Dr. Trost that additional diagnostics tests would not be performed because of the cost. Plaintiff submitted these grievances to his counselor but received no response, even after he inquired about responses through letters to his counselor.

At a hearing held on November 13, 2017, Plaintiff appeared by video-conference and by

counsel. The Court finds Plaintiff credible in his testimony that he submitted the aforementioned grievances but that he received no response.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the

statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code,[1] an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See*

---

[1] The Code was amended in April, 2017.

42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

As indicated above, Plaintiff claims that Wexford has a policy and/or practice of failing to provide competent medical professionals and failing to provide appropriate medical care because of cost. In his grievances, Plaintiff complained that he must make co-pays each time he sees a medical professional even though it is for an on-going condition, that diagnostic tests are not being performed because of the cost, and that he is not being furnished additional care because of decisions made by the employers of the medical professionals he encounters. Plaintiff fully exhausted one grievance setting forth some of these complaints (dated December 3, 2015). The prison failed to respond to two additional grievances setting forth some of these claims (dated December 21, 2015 and January 17, 2016). By failing to respond, the grievance process was rendered unavailable and Plaintiff is deemed to have fully exhausted all three grievances.

Wexford argues that because Plaintiff did not name it or set forth any policies in his

grievances, he failed to exhaust as to Wexford. Most of the grievance forms that Plaintiff used only required him to provide a "brief summary of the grievance." Neither the form nor the Administrative Code instructed Plaintiff to set forth each person or entity that he intends to sue or the claims that he intends to make before this Court. Grievances are not complaints intended to initiate litigation. *Jones*, 549 U.S. at 219. Indeed, it would be burdensome to expect an inmate, in the midst of dealing with an immediate medical problem, to understand the role Wexford plays in providing medical care and all the policies and procedures that it employees in determining such care. Plaintiff himself testified that he was unaware of Wexford when he filed his initial grievance. The first purpose of a grievance is to provide notice and an opportunity to correct problems highlighted by inmates. *Woodford*, 548 U.S. at 89. As to this first purpose, the grievance procedure "discourages disregard of the agency's procedures." *Woodford*, 548 U.S. at 89 (citation, quotation, and editing marks omitted). Plaintiff complained that he was being made to pay each time he sought care for an on-going condition, that he was told tests and care would not be given because of cost, and that these decisions came from a supervisory authority. Plaintiff sufficiently notified the prison that medical care was not being provided and the prison contacted the HealthCare Unit, which primarily is staffed by Wexford. Wexford should have been alerted to consider its policies and procedures as a result. Plaintiff properly exhausted his administrative remedies as to Wexford.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment field by Wexford Health Sources, Inc. be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen

(14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 14, 2017**

*/s/ Donald G. Wilkerson*

**DONALD G. WILKERSON**
**United States Magistrate Judge**